## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID M. OATES, Individually and for Others Similarly Situated, <br><br> v. <br><br> KINDER MORGAN ENERGY PARTNERS, LP | Case No. 5:19-CV-01171-SLP <br><br> Hon. Scott L. Palk <br><br> FLSA Collective Action Pursuant to § 216(b) |

## PLAINTIFF'S UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT

Plaintiff David Oates ("Oates") submits this unopposed motion for approval of the settlement of Oates and the Settlement Class Members[1] claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* against Defendant Kinder Morgan Energy Partners, LP ("Kinder Morgan") (together, the "Parties"). The Parties' agreement represents a fair and reasonable resolution of a *bona fide* dispute of Oates and the Settlement Class Members' FLSA claims, and the Court should approve the Parties' Settlement Agreement (Ex. 1) in full.

The Parties' Settlement Agreement provides Oates and the Settlement Class Members with a reasonable recovery in light of the risks inherent in continued litigation and trial. Kinder

---

[1] Capitalized terms used in this Motion have the same definition as those same terms in the Parties' Settlement Agreement. Ex. 1. Thus, "Settlement Class Members" includes up to 1,370 Inspectors who were generally employed by, or otherwise contracted with, (i) 3B Inspection, LLC; (ii) International Inspecting, Inc. d/b/a 3I; (iii) FIS Operations, LLC d/b/a Frontier Integrity Solutions; (iv) Table Rock Survey, LLC d/b/a Integrated Consulting & Inspection LLC; (v) Natural Energy Field Services, LLC; (vi) NV5, LLC; (vii) Onshore Quality Control Specialists, LLC; (viii) Platte River Inspection Services, LLC; (ix) Cleveland Integrity Services, Inc.; and (x) Kestrel Field Services, Inc. (collectively, the "Vendors Companies" or singular, "Vendor Company"), and who worked on any Kinder Morgan pipeline during the last 3 years and 87 days. *Id.* at ¶ 9.

Morgan has defended the claims asserted in this lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour law. Given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of this partial settlement, the Parties' Settlement Agreement is in both parties' best interest.

Accordingly, Oates respectfully requests the Court approve the Parties' Settlement Agreement (Ex. 1) in full.

## 1.    PROCEDURAL HISTORY

Oates filed this putative collective action on December 18, 2019, on behalf of himself and other similarly situated Inspectors, alleging Kinder Morgan misclassified these Inspectors as independent contractors and paid them a day rate with no overtime pay in violation of the FLSA. ECF 1. Kinder Morgan denied Oates's allegations and raised several affirmative defenses, including that Oates and certain Settlement Class Members (1) were subject to binding arbitration agreements, (2) were not its employees, (3) were exempt from the FLSA's overtime requirements, (4) were paid lawfully under the applicable law, and (5) that Kinder Morgan acted in good faith. ECF 12.

On April 29, 2020, Oates served his first set of written discovery to Kinder Morgan, which Kinder Morgan responded to on June 30, 2020. On June 3, 2020, Oates served a second set of written discovery on Kinder Morgan, which Kinder Morgan responded to on July 10, 2020. Further, from June until September, Oates served 14 subpoenas on Kinder Morgan's vendors that provided the Settlement Class Members seeking documents related to their alleged arbitration agreement, communications with Kinder Morgan, and the Settlement Class Members payroll records. Ultimately, the Parties (and Kinder Morgan's vendors) exchanged

thousands of relevant documents that made them intimately knowledgeable of the claims and defenses.

On June 1, 2020, Oates moved for conditional certification of a class of Kinder Morgan Inspectors who were paid a day rate with no overtime. ECF 38. On June 2, 2020, Kinder Morgan moved to compel Oates and Opt-In Plaintiff Lucien Boutte to arbitration (ECF 42), moved to compel production of unredacted consent forms (ECF 43), and moved for a stay of discovery pending its Motion to Compel Arbitration (ECF 44).

On June 19, 2020, in light of the Parties' agreement to mediate this action with experienced wage and hour mediator, Michael Russell, the Parties jointly moved to withdraw their pending motions and to equitably toll the Putative Class Members statutes of limitation. ECF 47; *cf.* ECF 49; ECF 50; ECF 51; ECF 52.

On October 23, 2020, after spending months gathering relevant pay data for the Putative Class Members from Kinder Morgan's vendors, the Parties attended a full-day mediation with Michael Russell. While the Parties were not able to reach a settlement at their mediation, they continued to negotiate in good faith, at times with the aid of Mr. Russell, for the following 3.5 months.

On April 29, 2021, the Parties executed a formal Settlement Agreement (Ex. 1) that Plaintiff now requests the Court approve. Specifically, the Parties reached the following settlement that resolved their *bona fide* dispute:

| | |
|---|---|
| Gross Settlement Amount: | $3,925,000 |
| Class Counsel's Attorneys' Fees: | $1,373,750 |
| Class Counsel's Costs: | Not to exceed $30,000 |
| Oates's Service Award: | $7,500 |
| Settlement Administration Costs: | Not to exceed $30,000 |

Net Settlement Amount:          $2,483,750

*See generally* Ex. 1.

2.      **SUMMARY OF THE SETTLEMENT AGREEMENT'S KEY TERMS.**

      **A.  The Gross Settlement Fund.**

The Parties agreed to settle Oates's and the Settlement Class Members' FLSA claims for $3,925,000 (the "Gross Settlement Amount."). *Id.* at ¶ 14.a. The Gross Settlement Amount includes the settlement payments to Oates and the Settlement Class Members, Class Counsel's attorneys' fees, Class Counsel's out-of-pocket litigation expenses, settlement administration expenses, and a Service Award to Oates. *Id.* at ¶¶ 14-15. The Settlement Agreement does not include the employer's share of payroll taxes. Under the Settlement Agreement, Class Counsel shall receive their attorneys' fees in the amount of $1,373,750, which is 35% of the Gross Settlement Amount. *Id.* at ¶ 15.b.i. Likewise, Class Counsel shall receive reimbursement for the reasonable costs expended during this litigation in an amount not to exceed $30,000. *Id.* at ¶ 15.c. The Settlement Agreement also provides Oates with a $7,500 service award to compensate him for his service as class representative. *Id.* at ¶ 15.a. Further, under the Settlement Agreement, settlement administration costs are not to exceed $30,000. *Id.* at ¶ 15.d. Thus, the Net Settlement Amount for the settlement payments to Oates and the Settlement Class Members is $2,483,750. *Id.* at ¶ 9.k. All administration costs, attorneys' fees, and litigation expenses are included in the Gross Settlement Amount, and Kinder Morgan shall not make any payment beyond the Gross Settlement Amount, with the exception of the employer's share of payroll taxes. *Id.* at ¶ 14.

**B. Class Counsel's Negotiated Fee Award.**

The attorneys' fee award accounts for 35% of the Gross Settlement Amount. *Id.* at ¶ 15.b; *see also* Ex. 2, Josephson Decl., at ¶ 29. Thus, the Parties agreed that Class Counsel shall receive $1,373,750 in attorneys' fees to compensate them for their efforts bringing and prosecuting this FLSA collective action. Ex. 1 at ¶ 15.b.

**C. The Net Settlement Amount.**

As discussed throughout, the Parties agreed to a *pro rata* allocation of the Net Settlement Amount based on the number of workweeks worked by the Settlement Class Members during the applicable Class Period. To calculate the *pro rata* settlement allocations, Class Counsel calculated Kinder Morgan's share of each Inspector's alleged back wages under the FLSA based on the number of workweeks they worked during the three-year statutory period plus 87 days (based on the Parties' tolling agreement) using pay data the Parties obtained from Kinder Morgan and its vendors. Using this damage model, Class Counsel applied Oates's and each Settlement Class Member's *pro rata* share to the Net Settlement Amount to determine Oates's and each Settlement Class Member's settlement payment.

The settlement payments will be distributed in 2 checks to Oates and each Participating Settlement Class Member. *Id.* at ¶ 9.t. Half of each settlement payment to each Participating Settlement Class Member will be reported on a W-2 form and represents payment for alleged unpaid overtime. *Id.* The other half will be reported on an IRS Form 1099 and represents payment for non-wage penalties and liquidated damages. *Id.* Kinder Morgan is separately responsible for payment of the employer's share of payroll taxes resulting from the W-2 portion of the settlement payments. *Id.* at ¶ 15.a. Further, Class Counsel's attorneys' fees and

costs will each be distributed in a single check that will be reported on an IRS Form 1099. *Id.* at ¶¶ 15.b.iii, 15.c. Likewise, Oates's Service Award will be distributed in a single check that will be reported on an IRS Form 1099. *Id.* at ¶ 15.a.

### D. Notice of Settlement and Release of Claims Against Kinder Morgan <u>Only</u>.

60 days after the Court approves the Settlement Agreement, the Settlement Administrator will send a Notice of Settlement and Claim Form to each Settlement Class Member via mail, email, and text message using the Parties' agreed upon scripts. *Id.* at ¶ 11.d; *see also* Exhibit 3 (Parties' email, text message, and phone scripts). The Settlement Notice informs the Settlement Class Members of the nature of this lawsuit, the fact this lawsuit has settled, their estimated settlement payment, how to participate in this settlement, and the claims a Participating Settlement Class Member will release. Ex. 1-A; *see also* Ex. 3. The Settlement Administrator will send an identical reminder Settlement Notice to the Settlement Class Members via mail, email, and text message 30 days and 60 days after the Settlement Administrator initially sends the Settlement Notice. Ex. 1 at ¶ 11.d. Class Counsel is also permitted to make a single phone call to the Settlement Class Members pursuant to an agreed-upon script to confirm receipt of the Settlement Notice. *Id.*; *see also* Ex. 3.

Those Settlement Class Members who return an executed Claim Form within 75 days of the Settlement Administrator initially sending the Settlement Notice will participate in the settlement, receive their settlement payment, and release Kinder Morgan <u>**only**</u> from their wage/hour claims related to the time each Participating Settlement Class Member was staffed to, or performing work for, Kinder Morgan, and employed by any Vendor Company. *Id.* at ¶¶ 9.n, 10.

Importantly, the Settlement Class Members are expressly **not** releasing any of the Vendor Companies. *Id.* at ¶ 10. To be clear, the Settlement Class Members are only providing a release to Kinder Morgan, and any claims they have against the Vendor Companies are expressly preserved. *Id.* Likewise, the Settlement Class Members are not releasing Kinder Morgan or any Vendor Company from any portion of their claim arising from a time during which any Settlement Class Member was staffed to, or performed work for, Kinder Morgan while employed by any Vendor Company. *Id.* Thus, these portions of the Settlement Class Members' claims also remain. *Id.* However, if one or more Participating Settlement Class Members asserts a claim against one or more Vendor Companies for the same work and workweeks performed for the benefit of Kinder Morgan Entities covered by the Settlement Agreement, the amount of such damages sought or recoverable from one or more Vendor Companies shall be reduced by the sum of any payment made to such Participating Settlement Class Members. The Settlement Agreement is intended to constitute a complete discharge of any and all liability of Kinder Morgan Entities to Participating Settlement Class members and result in a reduction of the damages recoverable from the Vendor Companies to the fullest extent permitted by applicable law. *Id.* at ¶ 34.

Finally, Kinder Morgan will fund the Gross Settlement Amount into a Qualified Settlement Fund ("QSF") no later than 30 days prior to the Settlement Administrator initially sending the Settlement Notice to the Settlement Class Members (i.e., 30 days after the Court approves the settlement). *Id.* at ¶ 14.a.

3.    **THE COURT SHOULD APPROVE THE PARTES' SETTLEMENT.**

    **A.  The Legal Standard for Approval of FLSA Settlements.**

Under the FLSA, covered employers must pay non-exempt employees overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

Courts have held that FLSA claims asserted in a private action may be compromised after the district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts … have held that such approval is not necessary." *Id.* (collecting cases).

That being said, where an FLSA collective action settlement involves potential plaintiffs not directly before the Court who will have an opportunity to receive notice of the

settlement and opt-into the collective (as is the case here), courts in the Tenth Circuit have found the application of *Lynn's Food Stores* is appropriate. *Id.* at *2-3. "Settlements may be permissible in the context of a suit brought by employees because initiation of the action … provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. "The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* Under these circumstances, the court should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354-55.

**B. The Court Should Approve the Parties' Settlement.**

**i.    The Settlement Resolves a *Bona Fide* Dispute.**

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Deesv. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

Kinder Morgan is one of the largest energy infrastructure companies in North America. Oates and the Settlement Class Members performed inspection services on Kinder Morgan's oil and gas pipelines, observing the work of third-party contractors and reporting their observations to Kinder Morgan.

Oates alleges Kinder Morgan misclassified him and the Settlement Class Members as independent contractors and paid them a day rate with no overtime in violation of the FLSA. ECF 1. Kinder Morgan denies that Oates and the Settlement Class Members are owed any overtime wages and contends that these Inspectors were properly classified and paid under the FLSA. ECF 12. Kinder Morgan further contends that, if Oates and the Settlement Class Members were its employees, they were exempt from the FLSA's overtime requirements. *Id.* Kinder Morgan also raises various other affirmative defenses to liability, including that Oates and certain Settlement Class Members were subject to arbitration agreements with collective action waivers, as well as contesting Oates's allegations for liquidated damages or that any violation of the FLSA was willful. *Id.*

Further, because Oates and the Settlement Class Members were paid on a day rate basis, Oates alleges Kinder Morgan should have, but did not track these Inspectors' actual hours worked. Indeed, Oates contends he and the Settlement Class Members typically worked 12-hour shifts for 6 or 7 days a week. ECF 1 at ¶ 26; ECF 38-2 at ¶¶ 13-16; ECF 38-3 at ¶¶ 13-16; ECF 38-4 at ¶¶ 13-16; ECF 38-5 at ¶¶ 13-16; ECF 38-6 at ¶¶ 13-16; ECF 38-7 at ¶¶ 13-16; ECF 38-8 at ¶¶ 13-16. Kinder Morgan, however, claim Oates and the Settlement Class Members were not its employees, typically only worked 10-hour shifts, in most cases were paid a salary, and were either not entitled to, or exempt from, overtime.

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

ii.     **The Terms of the Settlement are Fair and Reasonable.**

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-CV-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). Courts assessing an FLSA settlement for fairness and reasonableness often examine the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *McKeon v. Integrity Pizza LLC*, No. 18-CV-932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Delvin v. Scardelletti*, 536 U.S. 1 (2002)); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, at *4.

a.     **The Agreement Was Fairly and Honestly Negotiated.**

First, the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. That Parties gathered substantial data from Kinder Morgan's vendors showing the days worked and compensation received by Oates and the Settlement Class Members. Both Parties created damages calculations based on this data. The Parties went

through numerous offer and demand cycles. Settlement negotiations were facilitated by an experienced FLSA mediator, Michael Russell. And the Parties continued their arm's length negotiations for several months after their October 23, 2020 full-day mediation. The negotiations by experienced counsel and assistance of an experienced mediator demonstrate the Settlement Agreement was fairly and honestly negotiated.

**b.    The Ultimate Outcome of the Litigation Was Unknown.**

Second, questions of law and fact exist as to whether Kinder Morgan is liable to Oates and the Settlement Class Members and, if so, in what amounts. The Parties dispute the hours worked, whether Kinder Morgan acted in good faith and thus whether liquidated damages are appropriate, and whether Kinder Morgan acted willfully, which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations. The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

**c.    The Value of the Settlement to the Settlement Class Members Is Significant.**

Third, the immediate recovery offered by the proposed partial settlement is even more valuable considering the legal and factual uncertainties related to the alleged liability and damages. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in lengthy and costly discovery, disputes and motion practice regarding whether Oates and the Settlement Class Members are subject to binding arbitration agreement, motions for certification and decertification, which would likely be followed by cross-motions for summary judgment and potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed

settlement guarantees Oates and the Settlement Class Members will receive a substantial recovery.

Indeed, the degree of success here is high because Kinder Morgan vigorously contested Oates and the Settlement Class Members' claims, denied that these Inspectors were improperly paid, improperly classified, underpaid, that any alleged damages are owed. Kinder Morgan denied that the Inspectors are entitled to liquidated damages or that it acted willfully. Finally, Kinder Morgan denied that it was the employer of any Settlement Class Member or that it had any obligations to them under the FLSA or any other law.

In spite of the hotly contested case, the settlement provides the Settlement Class Members with approximately one-third of the total alleged three-year back wage liability and over 40% of the statutory two-year damages at issue. Ex. 2 at ¶ 25. Indeed, the average recovery from the Gross Settlement Amount is $3,079.45, with the maximum Settlement Payment being $15,994.38 and the minimum Settlement Payment being $98.13. *Id.* Even after the proposed attorneys' fees and costs, the Net Settlement Amount provides an average net recovery of $1,948.69, with the maximum Settlement Payment being $10,121.28 and the minimum Settlement Payment being $62.09. *Id.* This settlement represents substantial recovery considering the ongoing risks of litigation, the defenses at issue and the real possibility of a protracted fight for unpaid overtime. Further, because the scope of the settlement (and release) is limited to only Kinder Morgan, the Settlement Class Members have not given up an of their rights to recover additional unpaid overtime from the Vendor Companies should they elect to do so.

### d.    The Parties Agree the Settlement Is Fair and Reasonable.

Fourth, the Parties agree that the settlement is fair and reasonable. The Settlement Agreement was signed by Oates and Kinder Morgan. All Settlement Class Members will be provided a Settlement Notice and may participate in the settlement should they choose to. If they do not wish to participate in the settlement, their claims will be unaffected. This supports that the Parties' settlement is fair and reasonable. This is especially true given the Settlement Class Members are only providing a release to Kinder Morgan—and only for the time during which they were staffed to Kinder Morgan by a Vendor Company—and any claims they have against the Vendor Companies, as well as those against Kinder Morgan during a time they were not staffed by a Vendor Company, are all expressly preserved.

### e.    The Attorneys' Fees Under the Agreement Are Reasonable.

Fifth, as discussed in greater detail *infra*, Class Counsel's fee award is fair and reasonable. *See, e.g., Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). The FLSA provides that the Court "shall … allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828, at *1 (W.D. Okla. Oct. 23, 2018). If the Court examines Class Counsel's attorneys' fees, the Court should find they are within the customary fee range approved by courts in this Circuit (including in this District), and that the amount requested is fair and reasonable under the circumstances of this case. *See, e.g., McKinley v. Mid-Continent Well Logging Serv., Inc.*, No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *see also Ostrander v. Customer Eng'g Servs., LLC*, No. 15-CV-1476-

14

PAB-MEH, 2019 WL 764570 *6 (D. Colo. Feb. 21, 2019) ("fees have ranged from 4 per cent to 58 per cent" of settlement fund); *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (award equal to 37% of gross settlement amount "well within the normal range for a contingent fee award").

## 4.    THE COURT SHOULD APPROVE THE SETTLEMENT NOTICE DOCUMENTS.

The Court should approve the Parties' proposed Settlement Notice and Claim Form (Ex. 1-A), as well as their agreed-upon email, text message, and phone scripts (Ex. 3), as these Settlement Notice documents are the best practicable means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed settlement. Indeed, as discussed *supra* in Section 2(D), the Notice is accurate, objective, and informative and provides the Settlement Class Members with all of the information necessary to make an informed decision regarding their participation in the settlement and its fairness. Accordingly, the Court should approve the Parties' proposed Settlement Notice and Claim Form (Ex. 1-A), as well as their agreed-upon email, text message, and phone scripts (Ex. 3).

## 5.    THE ATTORNEYS' FEES AND COSTS ARE REASONABLE.

Class Counsel's attorneys' fees in the amount of $1,373,750 is reasonable, fair and an important provision of the Parties' agreement. Ex. 1 at ¶¶ 9.h, 14.b; Ex. 2 at ¶ 29. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308.

Although an award of attorneys' fees under the FLSA is **mandatory**, district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is

reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed. Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley*, 461 U.S. at 437.

"The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *see Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in collective actions, some courts

within the Tenth Circuit have considered twelve factors the Fifth Circuit outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.* Considering the circumstances presented herein, Class Counsel's requested attorneys' fees and litigation expenses are imminently reasonable as both as a percentage of the total common settlement fund and under the *Johnson* factors.

### A. FLSA Collective Actions are Inherently Complicated, and Class Counsel is Experienced and Skilled in Handling the Same (Factors 2-4 and 9-10).

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g.*, *Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether the Oates and the Settlement Class Members were improperly classified as independent contractors; (2) whether Oates and the Settlement Class Members were exempt employees, and (3) whether these questions could be resolved on a collective basis. Analysis of these questions and effective prosecution of these

claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g., Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006). FLSA collective action cases such as this are the main focus of Class Counsel's docket. Although Class Counsel is based in Texas, both Josephson Dunlap, LLP and Brucker Burch, PLLC have a national docket of FLSA cases, with litigation across the United States. Ex. 2 at ¶¶ 7-9. In recent years, Class Counsel's joint docket has carried around or over 250 cases involving FLSA collective action claims for oilfield workers, such as this case. Further Class Counsel have litigated thousands of similar cases over the years with tremendous success. *Id.*

Class Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this and maximizes the settlement value of the case. *Id.* at ¶¶ 3-10. As one court has expressly noted, "the firms involved in this case on the Plaintiffs' side are **among the most experienced and best regarded in this specialized practice area**." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (emphasis added); *see also Horton*, 455 F. Supp. 3d at 207 (finding Class Counsel "conduct[s] themselves professionally, demonstrate[s] deep knowledge of wage-and-hour law, and [are] diligent and responsive to the Court's orders.").

In addition to the number of potential Settlement Class Members, resolving the procedural issues, merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6.

As courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking clock from taking other cases (factor 4), given that counsel took a chance on possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Class Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Class Counsel.

**B. The Time and Labor Required Was Substantial and Class Counsel's Requested Costs Are Reasonable (Factors 1 and 7).**

Regarding the time and efforts required of Class Counsel (factors 1 and 7), this matter has been pending for over a year. During this time, Class Counsel, with the assistance of 7 lawyers, three law firms and multiple staff members performed extensive work. *See* Ex. 2 at ¶ 17 (describing Class Counsel's time and effort spent on this case) This represents a significant amount of time expended to reach resolution of this case.

In addition, to-date Class Counsel has incurred $6,312.20 in unreimbursed costs and expects to incur additional costs associated with the settlement administration process. *Id.* at ¶ 30. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Class

19

Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, postage and other delivery or service fees, Pacer charges, legal research, and mediation costs. *Id.* These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and under the Agreement, Kinder Morgan does not object to the same. *See* Ex. 1 at ¶¶ 9.k, 15.c.[2]

### C. Class Counsel Represented Oates on a Contingency Basis (Factors 5, 6, 10, 12).

Next, the negotiated, agreed contingency fee (factors 5, 6, 10, and 12) in the Professional Services Agreement between Oates and Class Counsel provides for a contingency fee of 40% of the gross settlement amount, but Class Counsel is voluntarily reducing that amount as part of this settlement. Ex.2 at ¶ 29. Class Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Class Counsel would have carried various advanced costs, as well as unrecoverable time spent. Ex. 2 at ¶¶ 29-30. Class Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g., Aragon*, 2018 WL 6620724, at *6; *Shaw,* 2015 WL 1867861, at *4. The "process

---

[2] Importantly, Class Counsel shall only receive reimbursement for its actual litigation costs, with any unnecessary amount reverting back to the Net Settlement Amount to be distributed to Oates and the Participating Settlement Class Members on a *pro rata* basis. Ex. 1 at ¶ 15.c.

of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires … deference … to the parties' agreement." *Id.*

### D. Class Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).

As discussed *supra* in Section 3(B)(ii)(e), Class Counsel's request for attorneys' fees in the amount of 35% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit. *Cf.* Ex. 2 at ¶ 29.

### E. Degree of Success Obtained is High (Factor 8).

Finally, "the most critical factor in determining a fee award is the degree of success obtained". *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). As discussed *supra* in Section 3(B)(ii)(c), the degree of success here is high and supports Class Counsel's attorneys' fees.

For these reasons, Class Counsel's negotiated fee of 35% and reimbursement of Class Counsel's advanced litigation expenses in an amount not to exceed $30,000 are reasonable and necessary in this case.

## 6. THE COURT SHOULD APPROVE OATES'S SERVICE AWARD.

Oates's requested service award is reasonable, and Kinder Morgan does not object to the same. Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See*, *e.g.*, *Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-*

*A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Pilego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases."); *cf. Wagner*, No. CIV-19-947-J, ECF 39 (approving enhancement award to the named plaintiff/class representative). The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018) (finding a $5,000 incentive award to an FLSA named plaintiff to be "on the lower end of awards deemed reasonable").

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pilego*, 313 F.R.D. at 131.

Importantly, Courts in this Circuit have found significantly higher incentive awards reasonable in other FLSA/employment cases. *See, e.g., Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff).

The proposed $7,500.00 service award to Oates is reasonable, and Kinder Morgan does not oppose this amount. The service award represents mere 0.19% of the Gross Settlement

Amount and is intended to recognize Oates's initiative and efforts on behalf of the Settlement Class Members and the time and effort he contributed to this lawsuit and the settlement over the last year. Indeed, Oates took a substantial risk in bringing the claims relating to Kinder Morgan's alleged FLSA violations. Ex. 2 at ¶ 31. In doing so, Oates faced potential retaliation and blackballing from prospective employers in the oil industry who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages. *Id.* Moreover, Oates expended significant effort and time in educating Class Counsel regarding the Inspectors' job experiences, compensation, and hours worked, as well as Kinder Morgan's policies and procedures. *Id.* Likewise, Oates assisted throughout the litigation by providing documents and information related to his work for Kinder Morgan, helping prepare the Motion for Conditional Certification (including providing a supporting declaration for the same) to help the Settlement Class Members receive notice of their opportunity to join this collective action, and participating in settlement discussions and the settlement approval process to help ensure the Class Members recover their unpaid wages. *Id.* Oates also participated in numerous telephone conferences with Class Counsel and their staff over the course of the litigation. *Id.*

Because Oates took significant personal risks in representing the interests of the Settlement Class Members and worked diligently to ensure the Class Members could recover the wages they are allegedly due, the proposed $7,500.00 service award agreed to by the Parties is reasonable to compensate him for these inherent risks and his substantial efforts on behalf of the Settlement Class.

7.    **THE COURT SHOULD OVERRULE ANY OBJECTIONS OF THE VENDOR COMPANIES TO THE SETTLEMENT AGREEMENT**

Oates anticipates Cleveland Integrity Services ("CIS") and possibly other Vendor Companies may feign a need to intervene in this lawsuit to oppose approval of the Settlement Agreement on grounds similar to those raised by CIS in seeking to quash the third-party subpoena issued by Oates to it. CIS moved to quash that subpoena by arguing that the Parties cannot "legally or ethically justify asking this Court to approve a[n FLSA] settlement for over 1,200 individuals" who have not yet opted-into this case (Doc. 110 at 2). But these third parties have no standing or other interest to challenge this settlement. (Doc. 114 at 8).

As an initial matter, it would be disingenuous for CIS or any other Vendor Company to raise such an argument in opposition to the Settlement Agreement's approval, as federal courts routinely approve the settlement of FLSA litigation on a pre-certification basis, authorizing notice to inform putative collective members of their rights under the settlement and to opt-into the case.[3] In fact, CIS itself recently agreed to settle FLSA pay practice claims

---

[3] *See, e.g., Cazeau v. TPUSA, Inc.*, No. 18-cv-321, 2021 WL 1688540 (D. Utah Apr. 29, 2021) (certifying collective for settlement purposes, and authorizing notice to putative opt-in plaintiffs of its terms and their right to opt-in and participate); *Johnson v. City of Philadelphia*, No. 19-cv-4264, 2021 WL 1387504 (E.D. Pa. Apr. 13, 2021) (same); *Dickey v. R.R. Donnelley & Sons Co.*, No. 18-cv-920, 2021 WL 1169245 (M.D.N.C. Mar. 26, 2021) (granting final certification of FLSA collective certified solely for purposes of settlement, under which putative opt-ins were informed of their rights to opt-into the case and settlement); *Sanford v. Nucor-Yamato Steel Co.*, No. 18-cv-158, 2021 WL 934033 (E.D. Ark. Mar. 11, 2021) (certifying FLSA collective for settlement purposes, and authorizing distribution of notice to inform the potential opt-in plaintiffs of their rights under the settlement); *Ware v. CKF Enter.*, No. 19-cv-183, 2020 WL 2441415 (E.D. Ky. May 12, 2020) (same); *Castro v. Paragon Inds.*, No. 19-cv-755, 2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) (same); *Davis v. Crilly*, 292 F. Supp. 3d 1167 (D. Colo. 2018) (same); *Diaz v. New Work City*, No. 16-cv-2319, 2017 WL 4682345 (N.D. Oh. Oct. 18, 2017) (same); *Walsh v. CorePower Yoga LLC*, No. 16-cv-5610, 2017 WL 589199, at *3, 14-15 (N.D. Cal. Feb. 14, 2017) (same); *Brown v. Reddy ICE Corp.*, No. 14-cv-1786, 2016 WL 2930933 (E.D.

in the Northern District of Oklahoma *on a pre-certification basis* in an action brought against CIS by its own employees—inspectors allegedly paid a daily rate. *Gundrum v. Cleveland Integrity Servs.*, No. 17-cv-55, 2017 WL 3503328 (N.D. Okla. Aug. 16, 2017).[4] Under the structure of that settlement, CIS agreed that (A) its employees could be given notice of the settlement, with an opportunity to opt-in, prior to contested certification and notice proceedings; and (B) CIS's employees could be deemed to have opted-into the case for FLSA purposes after the settlement's approval simply "by signing, depositing, and/or cashing" the settlement checks issued to them. *Id.* at *2-3. CIS's counsel—the law firm of McDermott Will & Emery LLP— also recently agreed to settle FLSA claims asserted against another of the firm's clients on a pre-certification basis, explaining that the client's employees could be deemed to have "affirmatively opt[ed]-in to the FLSA action [following the settlement's approval] by way of cashing their settlement share check." Joint Motion for Preliminary Approval of Collective/Class Settlement, Certifying Class for Purpose of Settlement, Directing Notice to the Class, and Scheduling Final Approval Hearing, *Shaulis v. Falcon Subsidiary LLC*, No. 18-cv-293, 2018 WL 3713669, at § I.6(i) (D. Colo. May 25, 2018), *preliminary approval granted*, 2018 WL 3037014 (D. Colo. June 19, 2018), *and final approval granted*, 2018 WL 4620388 (D. Colo. Sept. 26, 2018). Accordingly, neither CIS nor its counsel (nor any other Vendor Company for that matter) can plausibly contend that the Settlement Agreement should not be approved because litigation has not proceeded far enough in this case. FLSA collectives can, and routinely are,

---

Mo. May 19, 2016); *Jones v. Agilysys, Inc.*, No. 12-cv-3516, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013) (noting courts may "conditionally certify an FLSA suit as a collective action so that similarly-situated employees receive notice of the action and the proposed settlement").
[4] *See also* Doc. 114 at Ex. B (approval of settlement in *Fenley v. Applied Consultants*)

certified for settlement purposes prior to notice to the collective members, and both CIS and its counsel have acknowledged that the named parties do in fact have the authority to negotiate a collective-wide settlement prior to formal certification or notice proceedings.

In addition, it is anticipated that CIS and one or more of the other Vendor Companies may argue that the Court should not approve the Settlement Agreement because their employees, who are putative collective members here, previously "committed to arbitrate all FLSA claims on an individual basis" (Doc. 110 at 2). While Kinder Morgan may argue that it is a third party beneficiary of any agreements to arbitrate, it is uncontested that Kinder Morgan is not a signatory to those arbitration agreements, and the issue of whether Kinder Morgan may invoke arbitration as a third-party beneficiary of those agreements' varied terms is a question of law and fact disputed by the Parties, and one that has not been resolved by the Court (*Compare* ECF Nos. 42, 37-5 and 73-2 *with* ECF Nos. 53, 79). The purpose of settlement is to avoid "the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation" over disputed issues such as this. *Rodriquez v. West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quotation omitted).[5] And even if the Court holds that Kinder Morgan

---

[5] *See also, e.g.*, *Does 1-2 v. Déjà vu Servs.*, 925 F.3d 886, 895-96 (6th Cir. 2019) ("In evaluating settlements, courts are not required to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.") (quotation omitted); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975) (cautioning that settlement hearings should not be turned "into a trial or a rehearsal of the trial," and that courts should avoid reaching "any dispositive conclusions on the admittedly unsettled legal issues in the case") (partial quotation omitted); *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (same); *State of W. Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1085-86 (2d Cir. 1971) ("[T]he very uncertainties of outcome in litigation as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise:" courts "encourage settlements," which "could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.").

may invoke arbitration as a third party beneficiary to the Vendor Companies' arbitration agreements with their employees, Kinder Morgan has the power to waive the right to do so expressly or through its conduct in litigation (such as through agreeing to settlement before this Court). *Baker v. Conoco Pipeline Co.*, 280 F. Supp. 2d 1285, 1299 (N.D. Okla. 2003). It would be an odd result indeed if Kinder Morgan could be prevented from globally settling claims asserted against it as an alleged "employer of the inspector Plaintiffs because some of its vendors elected to negotiate arbitration agreements with their employees without expressly naming Kinder Morgan as a beneficiary. If Kinder Morgan was forced by the Vendor Companies to individually arbitrate (instead of voluntarily agreeing to arbitrate) the claims of the Vendor Companies' employees, under the procedural terms and conditions individually agreed to by the Vendor Companies and their employees, it would give rise to Due Process and other Constitutional concerns as, after all, "arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 861 (2010) (quoting *Volt Info. Sci. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)); *see also, e.g.*, *EEOC v. Waffle House*, 534 U.S. 279, 294 (2002) (same).

## 8.    CONCLUSION.

For all the reasons set forth herein, Oates respectfully requests the Court approve the Parties' Settlement Agreement (Ex. 1) in full. Further, Oates respectfully requests the Court approve the Parties' proposed Settlement Notice and Claim Form (Ex. 1-A), and their agreed-upon email, text message, and phone scripts (Ex. 3).

**Dated: May 25, 2021.**

Respectfully submitted,

**JOSEPHSON DUNLAP**

By: */s/ Taylor A. Jones*
      **Michael A. Josephson**
      TX Bar No. 24014780
      OK Fed. ID No. 14-145
      **Andrew W. Dunlap**
      TX Bar No. 2407844
      OK Fed. ID No. 14-148
      **Taylor A. Jones***
      TX Bar No. 24107823
      **admitted pro hac vice*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Michael Burrage**
OBA No. 1350
**WHITTEN BURRAGE**
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
405-516-7800 – Telephone
405-516-7859 – Facsimile

**ATTORNEYS FOR PLAINTIFF &
THE SETTLEMENT CLASS**

28

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2021, I served the foregoing pleading on all parties and/or their counsel of record via this Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/Taylor A. Jones*
**Taylor A. Jones**

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing the instant Motion, I conferred with Kinder Morgan's Counsel, who confirmed Kinder Morgan is unopposed to the requested relief as evidenced by the Parties' attached Settlement Agreement. *See* Ex. 1.

*/s/Taylor A. Jones*
**Taylor A. Jones**